Thank you to both counsel. 20-3084 Schafer v. Direct Energy Services. We'll hear from Mr. Kamber first. Thank you, your honor, and good afternoon. If it may please the court, I'm Scott Kamber presenting on behalf of Plaintiff Appellant Schafer, and I reserve two minutes for rebuttal. This appeal is a straightforward application of 12b6 jurisprudence. There's no implication of Colomboly, of Iqbal, of Erickson, or of plausibility. It is undisputed that Mr. Schafer adequately pled a violation of GBL 349d7, a key component in New York's ESCO's Bill of Rights, and the protection of consumers from variable rate energy billing practices. The only question on appeal is whether the district court erred by finding as a matter of law that the contract materials referenced in the complaint were clear and conspicuous. In reaching that incorrect and improper conclusion, the district court considered materials this court specifically prohibited consideration of on a 12b6 motion, and I'm referring to this district court based its analysis on an improper reading of 349d7. Finally, even considering the prohibited materials and misreading of the statute, the district court still wrongly concluded that two of the five documents at issue in this case contained clear and conspicuous disclosures of the variable rate as a matter of law. In fact, the conclusion of clear and conspicuous is the opposite conclusion that was reached by the district court in Fort and the district court in Stanley, two courts that reviewed precisely the same direct energy document. It is compelling that two other learned district court judges reviewed the same disclosures and denied a motion to dismiss, holding that a jury could reasonably find that the disclosures were not clear and conspicuous. Since the standard of review here is de novo, we ask that this court reverse the district court and find that the question of whether these disclosures were clear and conspicuous is a question of fact and that the case may proceed forward with discovery on this complaint as filed. I would like to touch on the documents themselves. When one looks at the documents that were reviewed by the court, one can see that it is not a matter of law that the disclosures regarding the variable rate were clear and conspicuous. The court itself conceded that three of the five documents did not contain a clear and conspicuous disclosure. In fact, the documents say fixed in many, many places in the document. In fact, the only disclosure that can be found regarding the variable rate in the introductory package was, in fact, disclosure that gave almost no information, was not set forth in any different font, and in fact was in a smaller font than the other headers. And it was just simply, as was reviewed by the court in Stanley, does not provide clear and conspicuous disclosure. I see that my initial three minutes is up and that the court may have questions. Thank you very much, Mr. Camber. Judge Poole? Yes, I have a question or two. Did the district court make a finding that Direct Energy sent the five separate documents at issue as two sets in envelopes? Is that a fact that you didn't address in the complaint? That is correct, Your Honor. We not only did not address it in the complaint, but even the declaration that was submitted by Direct Energy, which Appellant Schaefer believes was inappropriately considered by the district court, that did not set forth how those documents were sent. In fact, the only indication upon which the court faced that finding was in the reply brief of Direct Energy. And specifically in the Freidel case, this court said that facts cannot be extracted. District court errs when it considers affidavits and exhibits submitted by defendants or relies on factual allegations contained in legal briefs or memorandum. And that is precisely what the district court judge did in this case. Thank you, Counselor. I have another question. On paragraph 36 of your complaint, you say that the defendant here applies the frog and boiling water treatment. By that I mean, by that I assume you mean small increases that are gradual, sort of like a gliding path, which I referred to in a different case with the same defendant, so that it's hard for the consumer to notice. Is that correct? That is correct, Your Honor. And in fact, as you stated in the Richards case, the practices that Direct Energy is practicing here are in fact the same as there. And it is interesting that Direct Energy in the Richards case, that argument made the point that it prefers not to do variable rate contracts. It would prefer that they not happen. Yet in this case, they mislead consumers into a variable rate conversion at the end of the initial term with what we would say would be disclosure that is inadequate. Well, their business model requires the variable rate. If they ordered, offered a rate lower than what the utility offers and kept it lower indefinitely, they would be hard-pressed to see if they made a profit that was worth all of this. In fact, Your Honor, after December, New York State, in December of, I think it was 2019, the legislature, it became barred to offer variable rate contracts to new consumers unless it was green or it lowered the prices, the cost. And in fact, Direct Energy pulled out of offering new contracts at that point in time. I think demonstrating the very point that you make, Your Honor. Thank you, counsel. I have no further questions at this time. Judge Cabranas. Thank you. Judge Bianco. I have no questions. Thanks. All right. So, Mr. Campbell, why don't you finish up with whatever time you have left. Before we hear from Mr. Matthews. I would like to say thank you, Your Honor. I would just like to touch on the points of the law, you know, besides the clear and conspicuous determination, the actual act of making that determination is just, was improper of the court at this point in time. And the district court, when one looks at the Sims case, and these are set forth in our refinery, the Sims case specifically that a plaintiff alleged should be afforded an opportunity to convince a fact monitor that an average reader could not readily locate the disclosures within the materials provided. And in fact, only if the facts of the case are undisputed, can a district court determine as a matter of law, whether notice was reasonably conspicuous. In particular, also in the Mayer versus Ubertex case of this court, in quoting Windsor Mills, this court found that an offeree, regardless of apparent manifestation of his content, is not bound by inconspicuous contractual provisions. And that is my beeper. Thank you, Your Honor. And I have two minutes on reserve. Interesting business, this beeper. Let me just ask you, Mr. Camber, is it your beeper or is it the court's beeper? It's interesting. I thought it was the court's beeper, which is why I was so quick to end my time. Yet I'm looking at my beeper. Just wondering, just wondering. Thank you, Judge Bianco. Thank you, Your Honor. There were no questions from Judge Bianco, I gather. No. Nope. Thank you. All right. So we'll hear from Mr. Matthews. Good afternoon, Your Honors. My name is Matt Matthews and I represent Direct Energy of the Appellee. Your Honors, this case is about one thing, and that is whether the written contract materials that Direct Energy sent Mr. Schaefer clearly and conspicuously disclosed that he would be charged a variable rate. It's not about pricing practices or whether Schaefer was misled or what Mr. Schaefer expected from that contract. It is just about the contract disclosure itself. The trial court correctly found that Direct Energy's disclosures did clearly and conspicuously identify the variable rate as a matter of law, and we ask that you affirm. Clear and conspicuous means that a reasonable consumer would both see and understand the variable rate disclosure if he or she looked at the document. And when there's no dispute about the document sent to the consumer, clarity and conspicuousness is a question of law for the court. Here, there was no dispute in the trial court for multiple reasons. First, Mr. Schaefer did not attach the documents to his complaint, so he had no basis on which to bring a claim. And if that was the case, a 12B6 motion on plausibility would have been proper, but Direct Energy submitted the documents. Mr. Schaefer acknowledged that they were the documents referenced in his complaint, and the contract language in those documents shows that they were sent as two sets. They reference each other internally. Second, Mr. Schaefer embraced that. He argued his brief in response to Direct Energy's motion to dismiss said that the documents were sent as two sets, so he has waived that issue on appeal. But he's also pleaded in other contexts. This is part of our supplemental appendix. He pleaded in intervener complaints in fourth case, and even today, he still does not deny that those documents were sent to him in two sets. So, there is no dispute, and it is a question of law, and Chief Judge Garacci correctly held that both sets were clear and conspicuous as a matter of law. Both the enrollment agreement, which contained a simple, easy-to-read chart, and the renewal agreement, which Chief Judge Garacci said was even better, using a simple chart on the first page. And Judge Garacci is not the only one who believes these disclosures are good. These charts were specifically created by the New York Public Service Commission, the entity that regulates energy companies like Direct Energy, and it requires that they use these forms. So, there is no way that a reasonable consumer would not see and understand the disclosure forms that the PSC designed with that very cut. But to be clear, Chief Judge Garacci didn't rely on the PSC's approval of these forms. He found that the disclosures were objectively clear and conspicuous based on their own words and appearance, and that is a legal determination that courts regularly make as a matter of law. They do so because treating the issue of clarity and conspicuousness as a fact question that's not disputed creates uncertainty in drafting and risks inconsistent outcomes. I think that beef indicates that my three minutes are up, and I would be glad to answer the next question. Thank you. Yes, Counsel. Isn't it true that the question of conspicuousness is a fact to be decided by a jury, and whether the conduct was misleading is also a question of fact to be decided by a jury? No, Your Honor, it's not. Not when the question of what documents are at issue is not in dispute, as here. Courts regularly decide the issue of conspicuousness as a matter of law in the SILA context and in many others. Of course, the First Department found that it's a question of fact for the jury in New York. Isn't that correct? No, Your Honor. I believe there was a dispute there about whether the what documents had been sent to the consumer. The Struvel case, which is a First Department case, I'm sorry, looked at the issue of clarity and conspicuousness as a matter of law and decided on that basis, specifically talking about not just the fact that it could be decided as a matter of law, but that it must be because of the problems it creates with inconsistent outcomes and confusion in drafting, as I said. And as to the issue of whether a court may determine as a matter of law whether an allegedly deceptive statement may have misled a reasonable consumer, the answer there is no as well. And there I would point the court to its FINK decision from 2013. That case bears a lot of similarities to this one in that the plaintiffs there did not identify the advertisement that supposedly misled them. So this court actually asked for supplemental briefing in the appeal and took into account the documents submitted both by the appellant and the appellee. And the court said in post-argument briefing, in looking at it, that the plaintiff has to have some idea of the advertisement that supposedly misled him or her when he or she filed the case. And that the issue should be left to the jury who puts the cart before the horse. Counsel, the district court found that the documents were sent in the same envelope. There's nothing in the record to support that. Isn't that correct? There is, Your Honor. There's the declaration from Mr. Wood. Paragraph 12 was also referenced in the same footnote by the district court as the basis for that finding that they were sent in the same envelope. Mr. Wood, again, because Mr. Schaeffer didn't attach any documents to his complaints, he didn't have them when he filed the lawsuit. Direct Energy authenticated them through the Daniel Wood Declaration. It's Supplemental 12, which authenticated them as two sets. And as I said, Mr. Schaeffer embraced that framing in the district court. And so the judge, it was agreed below. They were sent as two sets, and the judge embraced that framing. But as I said, the documents themselves are the other evidence of that. Their language references the other documents. The welcome letter says, enclosed are your terms and conditions. The terms and conditions in the first paragraph reference an attached Schedule A, which is the disclosure statement. The disclosure statement is titled Schedule A, two terms and conditions. That's the first set, the enrollment documents. So you don't even need to look at the Daniel Wood Declaration or Direct Energy's reply to know that those documents were sent together. And it's implausible to say otherwise. The same with the renewal terms and conditions. I want to turn to another issue, the customer disclosure statement, which does not refer to variable charges as the statute requires. It instead refers to standard variable rate plan, and then failed to define the phrase standard variable rate plan anywhere in this disclosure. Because the plan could be variable in many ways, the plaintiff should be allowed to proceed to discovery. Don't you agree? No, Your Honor. Respectfully, I don't. I think that that language more than satisfies the statute and that a reasonable consumer who read that section to see what would happen at the end of the term would know that the agreement would convert to a standard variable rate. Just a in terms of terms, this is on Appendix 36, which is Mr. Schaeffer's disclosure statement. And I believe that Section 349 D7 requires, its plain language requires that variable charges be identified. And I think this disclosure statement more than satisfies that standard. But they're not denominated variable charges, are they? No. The statute doesn't require a description of the charge or an explanation of how the charge will be calculated, just that the variable charge be identified. I have no further questions. Judge Bianco? Yes, thank you. So on the legal issue of clear conspicuous, would you agree that the district court, it was critical to the decision that there were two sets of contract materials received, right? That was a critical part of his determination, right? I would acknowledge that, Your Honor. Yes. All right. So, and I think we'd also acknowledge because, you know, you keep pointing to the wood declaration, but first of all, the wood declaration doesn't, in that paragraph 12, doesn't clearly talk about two sets as I read it. But let's put that aside for a moment, because I think you would concede, as your adversary pointed out, that unless he converts it to a summary judgment motion, he can't consider the wood declaration to establish that there were two sets of materials. Isn't that the law of the circuit? No, Your Honor. I believe he can consider it. The documents themselves Mr. Schaffer admitted below were central to his complaint and that he... No, no. Yeah, he did concede that he said you can consider the documents, but nowhere did he say, I concede that it came in two sets. There's a difference between saying he referenced the documents and they can be considered, you know, you can read them. But if the key fact is whether or not they were set in sets, you can't, just because he references them in the complaint, he's not conceding how they came. Well, Your Honor, there are two things I would mention. One, even today, Mr. Schaffer does not say, I deny they were sent in two sets. He doesn't have to say that. He doesn't have to say that. If he just puts in a complaint that's silent on that issue, and you are relying on that to try to establish as a matter of law it was clear and conspicuous, then all you have to do is convert it to a summary judgment motion and say to him, okay, what's your evidence that they weren't two sets? And he would have to come up with something in response to what you've said. But that didn't happen here. And I think you haven't really explained why that's not a problem. You say that they reference each other, but just because documents reference each other, doesn't establish as a matter of law that they were sent together. If you have a document that says enclosed police finding a check for $1,000, the cover letter references the check, but you must have gotten the check. If he hasn't conceded he got the check, just because they reference each other doesn't mean he got them. Your Honor, the other thing that I would point to there, again, is the think case. The think case, the phrase that says this context is crucial. And that it's not just the fact that the documents were sent to themselves, but the way in which they were presented to the consumer that forms the basis of his allegation. And I think the court properly considered them as sets for the reasons I mentioned. Respectfully, the internal references said that if he disputed that the terms and conditions came together with the disclosure statement, that would be a fact question. I haven't denied or disputed that framing. Again, below in the district court, he embraced it, and he's embraced it in multiple pleadings. He can't deny it because from the other case, he knows that that is the way in which those documents were sent. On page seven of his brief, he said the facts in the Wood affidavit should be excluded. So I don't think he embraced the Woods affidavit. He said it should be excluded. Vote below, Your Honor. Vote below, yeah. For the district court, he didn't say you can consider the Wood affidavit. He said you should exclude it, right? With respect to other facts in there, there were two plaintiffs in the court below, and I believe that specific reference was to Mr. Underwood and the documents that he received. All right. Thank you. Judge Poole, any other questions? Well, I'll ask one question. Counsel, your business plan relies on the inattention of consumers. Isn't that correct? No, Your Honor. It doesn't. Tell me why not. The business plan is to sell fixed-rate contracts. The company goes to great lengths to send reminders about the expiration of those contracts. Hedging for fixed-rate contracts is much easier. If everyone could be on a fixed contract, it would be a simpler business. If I might make an effort, and I may be charging up a hill here, Judge Poole, but to distinguish this from the Richards case, I perceive a lot of the concerns in the dissent there as being directed towards a perception that direct energy takes advantage of a lack of regulation. And a lack of attentiveness of consumers. That's my real concern. Yes, Your Honor. But a perceived hole in the regulations that the PSC and regulators weren't overseeing what rates were being charged. Reset Order has addressed that. The Reset Order has not addressed these disclosures. And the case that we have here is not an issue of direct flouting regulations about clear and conspicuous disclosures. As I mentioned, they used the forms that were created by the PSC and approved by the PSC before they could use them. And that is not the situation that the plaintiff alleged in Richards. And just another quick note on those issues. I have no further questions, Judge Cabrera. Mr. Judge Bianco? Let me just confirm what I take to be the case. A question perhaps best put to opposing counsel who's about to proceed. But am I right to understand that the subject matter jurisdiction here rests entirely on the so-called Class Action Fairness Act? Everything else seems to be very much a question of New York law. But I take it that it's Section 1332 on class actions which provides the subject matter jurisdiction. Is that right? This is Mr. Matthews. Is that question directed to me or opposed? Yes, to you and then also to Mr. Camber. Okay. Thank you, Your Honor. Yes, that's correct. Okay. Fine. Thanks. We'll hear from Mr. Camber who's reserved two minutes. The Class Action Fairness Act, Mr. Camber, that's what provides subject matter jurisdiction here. That is correct, Your Honor. Turning to Mr. Matthews' points, and I think it's critical here, this is a motion to dismiss, not summary judgment. The primary authority upon which direct energy relies on this appeal is, in fact, summary judgment and not motion to dismiss authority. The authority to review a contract, whether or not it's appropriate as a matter of judgment. The dangers of this argument cannot be overstated because it undermines the very nature of 12b6 jurisprudence in this circuit. When one looks at the district court's decision in footnote 2, it says the court reviews each set as a unit since the documents were all designed to be and were sent in the same envelope. He does cite to the Wood Affidavit, which we contest as Judge Bianco rightly observes, that we believe is improper to consider, but he also cites to ECF number 17 at 10, which is the Rip's Library of direct energy. The only place in the record whatsoever where it is stated that they were designed to be and were sent in the envelope is the argument of direct energy's counsel. There is no other factual basis for that, and even if it was in the declaration, it would be improper. Mr. Camber, Jessica Branisch here. Tell me, given, assume for the argument that you prevail on this argument, which rests primarily on whether it's appropriate to enter a judgment on 12b6, what do you foresee as the future of this litigation if you prevail at this point? Glad you asked that, your honor. This is not a matter of trying to win the battle to lose the war. These disclosures are not clear and conspicuous. The court should be overruled, the complaint should proceed, and we should be able to proceed towards discovery, because the other courts that have considered this, the Stanley Court and the Fourth Court, have looked at these exact disclosures. In these exact disclosures, they said that they cannot consider as a matter of law that they were clear and conspicuous, and in fact, specifically, the Stanley Court stated this court is not confident enough in the clarity of the language of the renewal notifications to rule it's a matter of law that the existence of a variable rate plan was clearly and conspicuously disclosed to plaintiffs. Tell me, to just follow up on that description of further proceedings, what exactly would you require in the way of discovery? What's the future of this litigation? The discovery in this case, I think, is quite straightforward, Your Honor. We would expect to get some discovery from DirectEnergy regarding the context of these documents, how they were sent, were they sent by mail, were they sent by email, were they sent by 8 1⁄2 by 11 paper, were they sent by smaller paper. That all impacts the context of the clear and conspicuousness of the disclosure. The documents that we would be seeking go to that. We would also, as Judge Pudler actually referenced in her concurrence in Richard, that we would seek survey evidence on what particular passages would mean to a reasonable consumer. How this would be interpreted as a whole matters. It would also matter for us to proceed not just with the discovery that I state, but looking towards what would be presented to a jury. 349 D7 says every contract for energy services and all variable charges shall be clearly and conspicuously identified. That is not the approach that the district court took, which is why we ask that if this court were to reverse the district court, which we ask it to do, that it seeks to ensure that the case proceeds on this complaint. The district court has already determined that numerous documents, three of the five documents, were not clear and conspicuous. There is nothing in 349 D7 that says that if you get one document right, if you get one piece of paper right, that means that all of the other documents can be misleading or don't need to be clear and conspicuous. And I think that that's critical. Has the class been certified? No, this is a motion to dismiss. So nothing is proceeded. I think the fourth case presents very good guidance as to where we would proceed. The fourth case is the same contracts, but on the summary judgment pending. I believe that court is likely holding its ruling until the circuit rules on this case, but I think that the future holds Mr. Schaefer ultimately moving for class certification and ultimately direct energy will ultimately will seek to move for summary judgment, which we believe should be denied because the question of whether the disclosures were clear conspicuous are questions of fact for the jury as set forth in the Sims case. All right, thank you. Judge Poole, any final questions? No, thank you, Judge Cabrera. Judge Bianco? No, thanks. Thank you very much. We'll reserve decision and this is the last case for argument today. So I'll ask the clerk of court to adjourn court. Court is adjourned.